IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

BENNINGTON FOODS, L.L.C. d/b/a    :        CIVIL ACTION
BENNINGTON GROUP                  :
                                  :
            v.                    :
                                  :
ST. CROIX RENAISSANCE GROUP,      :
L.L.P.                            :        NO. 06-154

MEMORANDUM

Bartle, C.J.                                September 8, 2009

          Plaintiff Bennington Foods, L.L.C. d/b/a Bennington
Group ("Bennington Foods LLC") has sued St. Croix Renaissance
Group L.L.L.P. ("SCRG") in connection with the dismantling and
removal of scrap metal from the closed alumina processing plant
in St. Croix.  Plaintiff alleges breach of contract and also a
number of tort claims.  Now before the court are the parties'
cross motions for summary judgment.  Bennington Foods LLC seeks
partial summary judgment with respect to four issues.  SCRG moves
for summary judgment on all ten of the claims of Bennington Foods
LCC as well as on its own counterclaim for reformation.[1]   SCRG
informs the court, however, that if it is successful on summary
judgment with respect to the contract claims of Bennington Foods

_____

1.  In the alternative, SCRG moves for dismissal of plaintiff's
Second Amended Complaint for failure to state a claim for relief.
Since defendant relies on matters outside the pleadings, a motion
to dismiss is not appropriate.  Fed. R. Civ. P. 12(d); Albright
v. Virtue, 273 F.3d 564, 570 (3d Cir. 2001).

LLC, then its counterclaim will become moot and need not be addressed.

I.

The following facts are undisputed unless stated otherwise. In June, 2002, SCRG purchased from Alcoa the closed alumina processing plant located on the south shore of St. Croix. Three years later, in late 2005, SCRG began to take steps to have the processing units dismantled in order to clear the space for other uses. SCRG had no interest in the scrap metal that would result from the plant dismantling. Its goal, therefore, was to find someone willing to do the dismantling and buy the scrap.

SCRG engaged the services of Arthur Muchnick, owner of Montrose Global Assets Inc. ("Montrose"), a scrap metal broker, to locate a company to clear the property. SCRG retained authority to approve whomever Montrose selected for the job. Montrose identified "Bennington Group LLC" for a portion of the dismantling. Abul Shah held himself out as the principal negotiator for Bennington Group LLC.

Central to this lawsuit is the contention of SCRG that Bennington Group LLC is not the same entity as Bennington Foods LLC, the plaintiff bringing this action. Thus, SCRG maintains that this action is being pursued by the wrong party. Bennington Foods LLC was formed on June 23, 2003 as a Florida company. It registered the fictitious name "Bennington Group" on February 23, 2005. According to the Second Amended Complaint, which

Bennington Foods LLC filed on April 20, 2009, "the entity 'Bennington Group, L.L.C.' does not exist."

At issue are three different signed documents related to the dismantling of the alumina plant and the purchase of the scrap metal. The first, "Agreement for the Demolition & Sale of Scrap Metal," was a contract signed by SCRG and Montrose on March 10, 2006. It arranged for Montrose to obtain a contract for the dismantling, shipment, and sale of the scrap metal at the SCRG site. It specifically contemplated Montrose signing a contract with Bennington Group LLC to do the work, and it referenced all the parties signing "Contract Specifications" to define the project requirements. It was further agreed in this first contract that SCRG and Montrose would share the net sale proceeds on a 50-50 basis and that Montrose was responsible for providing "personnel at its own cost for oversight of the segregation, collection and loading of the scrap metals." The document stated that it "constitute[d] the entire agreement [b]etween Montrose and SCRG" and that "[a]ny changes must be made in writing upon the agreement of both Montrose and SCRG." The final clause stated that the law of the Virgin Islands was the governing law.

A second document, also signed on March 10, 2006, was entitled "Contract for Structural, Plate, and Heavy Melting Steel Scrap" ("Scrap Metal Contract"). It was executed by Bennington Group LLC and Montrose but not by SCRG. In this contract "Montrose agrees to sell, and Bennington [Group LLC] agrees to

buy" +/-50,000 metric tons of scrap metal at the rate of $52 per
metric ton, for a total price of $2,600,000.  The scrap metal to
be sold was described as "Tanks Structures and Steel Associated
With former Alumina Factory as seen in St. Croix December 2005,
February 2006."  Integral to the agreement was an arbitration
provision that stated in part, "Any controversies or disputes
arising out of or relating to this Contract shall be resolved by
binding arbitration ....  The arbitration shall be settled
pursuant to rules of the American Arbitration Association in New
York NY."  The Scrap Metal Contract also had an integration
clause which read:  "This Contract contains the entire agreement
of the parties regarding the subject matter of this Contract, and
there are no other promises or conditions in any other agreement
whether oral or written."  Finally, it provided that it was to be
governed by the laws of the State of New York.

The third document bears two lengthy titles:  "St.
Croix Renaissance Group LLLP (SCRG)/Montrose Global Assets Inc.
(MGA)/Bennington Group/J&S Development Corp./Bradford Welding &
Truck Equipment Contract Specifications" and "Project:
Dismantling and Recovery of Scrap, Former Alumina Refining
Facility, 1 Estate Anguilla, Kingshill, St. Croix, US Virgin
Islands."  While plaintiff refers to this document as both the
"Dismantling Contract" and the "Contract Specifications," we will
hereinafter refer to it as the Dismantling Contract.  It included
a "Table 1:  Partial List of Items to be Dismantled and Removed,"
which included among other items, tanks T-30-1 and T-30-2.  This

-4-

contract was circulated and signed between March 16 and March 21, 2006 by representatives of SCRG, Montrose, Bennington Group, and two subcontractors, J&S Development Corp. and Bradford Welding & Truck Equipment. SCRG maintains that the Dismantling Contract was executed by Bennington Group LLC, not the plaintiff Bennington Foods LLC. SCRG is incorrect. The title of the Dismantling Contract bears the name of Bennington Group, the registered fictitious name of Bennington Foods LLC, and it was signed on behalf of Bennington Group, not Bennington Group LLC.

The Dismantling Contract broadly describes the responsibilities of the parties with respect to the dismantling of the alumina plant, although it is not a model of clarity. It begins with the following project description: "Based on a request from Montrose Global Assets Inc., (MGA) Bennington Group has agreed to dismantle, purchase, and ship the resultant scrap metal of St. Croix Renaissance Group LLLP located at 1 Estate Anguilla, St. Croix, U.S. Virgin Islands." Mobilization was scheduled to begin "[o]n or around April 1, 2006," and once it began it was to "continue on schedule till completion." Among other responsibilities, Montrose was to oversee the "[s]ale of scrap to Bennington Group and collection of payments." SCRG and Montrose were to "sell[] the scrap from the demolition of the tanks, piping and equipment." SCRG assumed responsibility for obtaining "[a]ll necessary permits pertaining to demolition and removal of scrap" and for the removal and disposal of any hazardous materials related to the dismantling process. The

final sentence on the signature page reads:  "This contract represents the total agreement between the parties and will be governed by USVI law."

It is the contention of Bennington Foods LLC that the Scrap Metal Contract and the Dismantling Contract together formed a single integrated agreement that binds it and SCRG.  SCRG insists they are separate contracts and disavows being subject to the terms and conditions of the Scrap Metal Contract.  SCRG further contends that plaintiff Bennington Foods LLC has no authority to enforce either contract because a different entity, Bennington Group LLC, was the party that actually executed them. We note that Bennington Foods LLC has nowhere argued that it can recover the scrap metal if only the Dismantling Contract is enforced.  The latter contract, which was signed by SCRG and Bennington Group (not Bennington Group LLC), contains nothing regarding the sale of scrap metal.

Under Virgin Islands law the demolition of the alumina plant required two types of permits:  a demolition permit, which is relatively easy to obtain, and a major coastal zone management ("CZM") permit which takes a minimum of 85-110 days to issue. SCRG submitted drawings to the governing agency, the Virgin Islands Department of Planning and Natural Resources ("DPNR"), in February, 2006 for the demolition permit.  It filed a CZM permit application with DPNR on March 7, 2006, three days before the Scrap Metal Contract was signed.  SCRG notified DPNR in its CZM

permit application that it would be using Bennington Group LLC for the demolition work.

DPNR deemed the CZM permit application complete on May 15, 2006 and a public hearing was scheduled for June 26, 2006. Meanwhile, in early April, 2006, with permission from SCRG, a "Bennington" entity and certain subcontractors arrived at the SCRG site to commence pre-demolition work. Disputes arose, however, concerning the scope of the pre-demolition work and the presence of asbestos.

A DPNR building inspector learned of the pre-demolition work during a site visit on or about April 26, 2006 and issued an oral stop work order. SCRG directed Abul Shah that no further work was to take place. All work stopped for about three weeks. "Bennington" and the subcontractors, complaining that there was no written stop-work order, subsequently resumed demolition. SCRG reported them to DPNR. On June 13, 2006, prior to any permit issuing, staff from the Division of Building Permits as well as CZM enforcement officers inspected the site and observed the work being done. As a result, two days later, on June 15, DPNR issued a written cease and desist order directing all work to be stopped, all equipment to be removed, and all workers to be barred from the job-site including their temporary residences there. On June 19, 2006, SCRG forcibly removed the workers. At the time, workers had harvested, that is, dismantled and prepared for removal, approximately 30,000 tons of scrap metal and 50 tons of copper.

DPNR held a hearing regarding the cease and desist order on June 29, 2006 with all parties and counsel present. On July 14 it made several findings of fact and directed the cease and desist order to remain in place. On July 28 the findings were reiterated and fines were assessed against SCRG, Bennington Group LLC, and the two subcontractors, J&S Development Corp. and Bradford Welding & Truck Equipment Inc.

While the above dispute regarding the scope of the pre-demolition work was brewing, a second dispute arose concerning the presence of asbestos at the SCRG work site. Bennington Foods LLC contends that asbestos and hazardous materials were found at the work site and that SCRG did not adequately or timely abate those hazards. SCRG admits that there were hazardous materials present but maintains that it met its obligation to remove them under the Dismantling Contract, which provided:

> SCRG/MGA will be solely responsible for the dismantling and disposal of any hazardous waste material or other hazardous material related to scrap dismantling on-site. In the event that such waste is discovered by the Project Manager along with his contractor/subcontractor, the requisite work required to remove such material will be completed by SCRG/MGA or through a third party, or alternately, the Project Manager along with his contractor/subcontractor may employ the services of a suitable and licensed third party upon written confirmation from SCRG/MGA. All expenses pertaining to such removal of hazardous waste, including any dismantling required, will be paid by SCRG/MGA.

Plaintiff Bennington Foods LLC maintains that the documents SCRG has offered to prove its compliance with the terms of the contract are incomplete and misleading.

Litigation in this matter began immediately following the eviction of the contractors and subcontractors from the SCRG site. On or about June 28, 2006, Bennington Foods LLC filed a demand for arbitration against SCRG and Montrose under the Scrap Metal Contract before the International Centre for Dispute Resolution to stop all dismantling and demolition work, prohibit the removal of any scrap metal, and allow Bennington Foods LLC access to the SCRG site to inventory the scrap metal and remove it from the facility. In response, on August 21, 2006, SCRG successfully brought a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida to stay the arbitration. St. Croix Renaissance Group, LLLP v. Bennington Foods LLC, d/b/a Bennington Group, No. 06-15257 (Fla. Cir. Ct. Sept. 26, 2006). Montrose also initiated suit in the Supreme Court of New York to stay the same arbitration. Montrose Global Assets, Inc. v. Bennington Foods, LLC d/b/a Bennington Group, No. 4044-07, 2007 WL 2874952 (N.Y. Sup. Ct. Sept. 28, 2007). It too persuaded the court to stay the arbitration.

After receiving the decision of the Florida Circuit Court, on November 22, 2006, Bennington Foods LLC filed a complaint in this court against both SCRG and Montrose. At Bennington Foods LLC's request, the claims against Montrose were dismissed on January 18, 2007. Bennington Foods LLC moved for a

preliminary injunction allowing it to remove the scrap metal and copper harvested prior to eviction. Judge Finch of this court, after a hearing, granted the motion and SCRG appealed. Our Court of Appeals, finding "no possibility of irreparable harm on the record before us," vacated the order. Bennington Foods LLC, d/b/a Bennington Group v. St. Croix Renaissance Group, LLP, 528 F.3d 176, 179 (3d Cir. 2008). The court reasoned that monetary damages were an adequate remedy. Id.

On April 20, 2009, Bennington Foods LLC, with the permission of this court, filed a Second Amended Complaint that contains ten counts against SCRG. In Count I, entitled Specific Performance, Bennington Foods LLC contends that the value of the scrap metal it harvested, or would have harvested, is unascertainable. Plaintiff demands specific performance of both the Scrap Metal Contract and the Dismantling Contract because, it contends, monetary damages would be inadequate.

In Count II, Bennington Foods LLC alleges that SCRG breached the alleged agreement formed by the Scrap Metal Contract and the Dismantling Contract and requests monetary damages.

Counts III and IV contain allegations for fraud and negligent misrepresentation with respect to the formation of the Scrap Metal Contract and the Dismantling Contract.

In Count VI Bennington Foods LLC seeks reformation of the Scrap Metal Contract and the Dismantling Contract to change the name "Bennington Group, L.L.C." to "Bennington Foods, L.L.C. d/b/a Bennington Group." It claims that the mistake was due

solely to "a scrivener's error of which both parties were unaware" and which "does not accurately reflect the intention of the parties."

Bennington Foods LLC asserts in Count IX that SCRG has converted its personal property, namely the "tanks, structures, and steel" from the former alumina factory that Bennington Foods LLC claims it contracted to dismantle and purchase. Bennington Foods LLC makes similar claims in Count X for trespass to chattel and demands that SCRG return its personal property.[2]

In its answer to plaintiff's Second Amended Complaint SCRG asserts a counterclaim for reformation of the Dismantling Contract. SCRG states that "there are items on the list of items to be dismantled that were never intended to be dismantled and were inserted into the contract by an inadvertent mistake." It wants to delete these items, primarily large storage tanks, from the Dismantling Contract.

Bennington Foods LLC now moves for partial summary judgment on the following four issues that: (1) the Scrap Metal Contract and the Dismantling Contract "form one overall contract that governed the relationship of the parties," (2) Montrose was the agent of SCRG, (3) "Bennington Foods, LLC d/b/a Bennington Group is and always has been a party to the documents and contract at issue here," and (4) Bennington Group purchased scrap metal from SCRG, which SCRG has wrongfully converted. SCRG

---

2. Bennington Foods LLC no longer wishes to pursue Count V, "Tortious interference with contractual relationship," Count VII, "Replevin," or Count VIII, "Spoliation."

opposes plaintiff's motion, as noted above, and brings its own
motion for summary judgment on all claims of Bennington Foods LLC
as well as on SCRG's counterclaim.

II.

Rule 56 of the Federal Rules of Civil Procedure
provides that summary judgment "should be rendered if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine"
if the evidence is such that a reasonable jury could return a
verdict for the non-moving party.  <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "material"
when it "might affect the outcome of the suit under the governing
law."  <u>Id.</u>  After reviewing the evidence, the court draws all
reasonable inferences in the light most favorable to the non-
moving party.  <u>In re Flat Glass Antitrust Litig.</u>, 385 F.3d at
357.  We may consider only evidence that would be admissible at
trial.  Fed. R. Civ. P. 56(e); <u>Philbin v. Trans Union Corp.</u>, 101
F.3d 957, 961 n.1 (3d Cir. 1996).

III.

We first address the motion of SCRG for summary
judgment on Counts I through X of the Second Amended Complaint.
At the outset, SCRG argues that plaintiff Bennington Foods LLC is
not entitled to relief because it is not the same entity as
"Bennington Group LLC," the name of the party that appears on the

-12-

signed Scrap Metal Contract.  Furthermore, SCRG contends that the decisions of state courts in Florida and New York preclude us from reaching any other conclusion under the principle of issue preclusion, previously known as collateral estoppel.

The application of issue preclusion requires the presence of four factors:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995); Restatement (Second) of Judgments § 27.[3]

In August, 2006, SCRG filed an action in the Florida Circuit Court for Miami-Dade County to obtain a stay of the demand of Bennington Foods LLC for arbitration under the Scrap Metal Contract, the same contract as is involved in this action. See SCRG, No. 06-15257 (Fla. Cir. Ct.).  To rule on SCRG's request, the court was required to determine whether the arbitration provision in the Scrap Metal Contract was binding on the parties.  The parties presented extensive documentary evidence and made arguments similar to those that they have brought before us.  SCRG contended that it was not a signatory to

_____

3.  The Legislature of the Virgin Islands has provided:  "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute ... shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."  V.I. Code. Ann. tit. 1, § 4.

the Scrap Metal Contract and was therefore not bound by the arbitration provision contained in it.  Bennington Foods LLC maintained that SCRG was bound by the provision either through agency, estoppel, or incorporation by reference.  Id. at 2.  SCRG further asserted that it was Bennington Group LLC and not Bennington Foods LLC which was a party to the Scrap Metal Contract.  Id. at 3.

The court in Florida first found that SCRG had not executed the Scrap Metal Contract.  It then turned to the question of whether SCRG, even though a non-signatory, could be bound by the arbitration clause under a theory of incorporation by reference, assumption, agency, piercing the corporate veil, or estoppel.  Id. at 2.  It noted that on the face of the contract "Montrose was the seller and executed it without a designation as an agent" and that SCRG made no admissions in its correspondence that Montrose was its agent.  Id. at 3.  Following oral argument, the court concluded that Bennington Foods LLC had failed to meet its burden of proving any one of the theories which would bind SCRG, a non-signatory, to the arbitration provision of the Scrap Metal Contract.  Id.

Second, the court determined, based on "voluminous documentary evidence submitted," that it was Bennington Group LLC and not Bennington Foods LLC that was a signatory to Scrap Metal Contract.  Id. at 4.  The court explained that "[t]he filing of 'Bennington Group,' as a Florida registered fictitious name of

Defendant, did not make Bennington Group LLC, a fictitious name."

<u>Id.</u>  It determined that:

> 11) Although Bennington Group LLC was a signatory to the arbitration agreement, it did not sign using the fictitious name of d/b/a/ "Bennington Group".  The arbitration agreement contains no reference to the fictitious name of d/b/a "Bennington Group". Rather, the most important piece of evidence is correspondence dated May 17, 2006 showing that Bennington Group LLC has its place of business in New York and that it is an affiliate of Defendant as well as Bennington Global Resources LLC and other entities.
> 12) The evidence shows that the filing of "Bennington Group," as a Florida registered fictitious name of Defendant, did not make Bennington Group LLC, a fictitious name.

<u>Id.</u>

In a motion for reconsideration, Bennington Foods LLC advocated that the name "Bennington Group LLC" was an unregistered fictitious name of "Bennington Foods LLC" and that SCRG understood it as such.  <u>St. Croix Renaissance Group, LLLP v. Bennington Foods LLC, d/b/a Bennington Group</u>, No. 06-15257, at 2 (Fla. Cir. Ct. Jan. 16, 2007).  Again the Florida court was not persuaded.  It found that there was no evidence that SCRG knew that "Bennington Group LLC" was an unregistered fictitious name of Bennington Foods LLC or that it knew of the identity of Bennington Foods LCC or its location in Florida.  <u>Id.</u> at 3.

Bennington Foods LLC, as noted above, also demanded arbitration against Montrose under the Scrap Metal Contract in issue here.  Montrose filed suit in the Supreme Court of New York to stay arbitration.  The court, in <u>Montrose Global Assets, Inc.</u>

v. Bennington Foods, LLC d/b/a Bennington Group, reached a
similar result to that of the Circuit Court in Florida.  It is of
no consequence that SCRG was not a party to the New York state
court action.  Issue preclusion still applies as long as the
entity against which issue preclusion is being asserted was a
party in the earlier action.  United States. v. Mendoza, 464 U.S.
154, 158 (1984).

> The court in Montrose found that:
>
>> [a]t the time the contract was executed,
>> "Bennington Foods, LLC," a signatory to the
>> contract with Montrose, was neither
>> incorporated under the laws of any country,
>> nor registered anywhere as a fictitious name,
>> assumed name or "d/b/a" for Bennington Foods,
>> LLC or Bennington Group.  Moreover, the
>> course of dealings between the parties
>> indicates that "Bennington Group, LLC" is the
>> only entity that could properly assert a
>> claim for arbitration under the contract.

2007 WL 2874952, at 7.  The New York court concluded that the
argument of Bennington Foods LCC that the use of the name
"Bennington Group, LLC" in the contract was a scrivener's error
was "totally untenable in light of the extensive correspondence
received from and addressed to 'Bennington Group, LLC.'"  Id.

In the motions presently before us SCRG reiterates that
neither it nor plaintiff Bennington Foods LLC was a signatory to
the Scrap Metal Contract.  Bennington Foods LLC replies that SCRG
is bound by the contract because Montrose, which executed it, was
SCRG's agent and because the Dismantling Contract, to which SCRG
was a party, contemplated and referenced the Scrap Metal
Contract.  It also argues that the use of the name "Bennington

Group LLC" was a scrivener's error.  Unfortunately for plaintiff, these issues have already been litigated and actually decided. Two courts have addressed the scrivener's error argument, and one has addressed the question of agency.  In both cases, the courts found against Bennington Foods LLC, the plaintiff here.

The four factors required for the application of issue preclusion have been met.  In rendering its decision on whether to stay the arbitration, the Florida court resolved, after litigation, the identical issues raised here, that is, whether SCRG and Bennington Foods LLC were each bound by the Scrap Metal Contract.  The Florida court necessarily decided those issues. Even if it was unnecessary for the Florida court to conclude that Bennington Foods LLC was not bound by the Scrap Metal Contract after it decided that SCRG was not a party to or bound by it, the findings of the New York court, after litigation, that Bennington Foods was not a signatory was necessary to that court's decision. Finally, Bennington Foods LLC was fully represented by counsel in both the New York and Florida state court proceedings.  See Raytech Corp., 54 F.3d at 190; Restatement (Second) of Judgments § 27.

Plaintiff Bennington Foods LLC maintains that issue preclusion should not apply because this court and our Court of Appeals did not invoke the doctrine when considering plaintiff's motion for preliminary injunction.  We are not persuaded. Bennington Foods LLC overlooks the fact that this court's decision regarding the request for a preliminary injunction

contained only preliminary findings of fact made prior to discovery.  See Mem. of Apr. 16, 2007.  The hearing was initially scheduled for December 8, 2006, less than two weeks after the complaint was filed, and after several continuances, was ultimately conducted on February 16, 2007.  The findings of the court with respect to the preliminary injunction "do not foreclose any findings or conclusions to the contrary based on the record as developed" later in the litigation.  See N.J. Hosp. Ass'n v. Waldman, 73 F.3d 509, 519 (3d Cir. 1995).  Moreover, at this early stage of the litigation the court declared that it did "not reach the question of whether SCRG or Bennington Group were parties to the Montrose/Bennington Group, LLC Contract," that is, the Scrap Metal Contract.  Mem. of Apr. 16, 2007 at 8.  It only found preliminarily that it was "sufficient ... that Bennington Group and SCRG were parties to the Dismantling Contract to find a contractual relationship between the two."  Id.

Likewise, the decision of the Court of Appeals vacating the preliminary injunction does not bar our conclusion that issue preclusion applies.  That court considered only whether the district court correctly ruled that failure to grant a preliminary injunction would result in irreparable harm.  It did not reach the merits of the action, and it did not indicate that it had considered issue preclusion.

Accordingly, plaintiff Bennington Foods LLC is barred under the doctrine of issue preclusion from relitigating the two earlier court decisions that SCRG and it are not parties to or

bound by the arbitration provision of the Scrap Metal Contract
and thus are not parties to or bound by the Scrap Metal Contract
of which the arbitration provision was simply an integral part.

IV.

We now turn to the specific claims of Bennington Foods
LLC in the Second Amended Complaint as to all of which SCRG moves
for summary judgment.

In Count I Bennington Foods LLC requests specific
performance based on its breach of contract claims under both the
Scrap Metal Contract and the Dismantling Contract. It aims to
gain possession of the scrap metal it allegedly had dismantled
and prepared for removal at the SCRG site prior to its eviction
as well as the scrap metal it did not have the opportunity to
harvest before the Government of the Virgin Islands shut down the
work site.

As explained above, issue preclusion bars any relief to
Bennington Foods LLC under the Scrap Metal Contract. Plaintiff's
claim also fails under the Dismantling Contract because specific
performance is not available. Our Court of Appeals, based on the
record before it, held that "[t]he inability to gain possession
of the scrap metal at issue here creates at most a monetary
loss." <u>Bennington Foods LLC, d/b/a Bennington Group</u>, 528 F.3d at
179. Where monetary damages would suffice, specific performance
is inappropriate. Restatement (Second) Contracts § 359. There
have been no additions to the record since the ruling of the
Court of Appeals that would now allow for anything other than

-19-

monetary damages.  Furthermore, in order for Bennington Foods LLC
to complete the dismantling described in the Dismantling
Contract, the government of the Virgin Islands, a non-party to
this action and the contract, would first have to issue the
building and CZM permits.  A defendant cannot "be ordered to
render a performance that requires action by a third person who
refuses to perform and who is under no duty to do so."  <u>Id.</u> at
§ 368 cmt. a.  Therefore, we will grant summary judgment in favor
of SCRG on Count I of the Second Amended Complaint.

Bennington Foods LLC alleges in Count II that SCRG
breached the Scrap Metal Contract and the Dismantling Contract
"by failing to timely obtain permits and properly abate
environmental hazards found by Bennington and its subcontractors
at the Facility."  For the reasons discussed above, SCRG is
entitled to summary judgment as to any claims under the Scrap
Metal Contract.  The Dismantling Contract, by its own terms, is
an independent and fully integrated contract.

The Dismantling Contract expressly places on SCRG the
burden of obtaining permits and abating environmental hazards.
It provides in pertinent part:

> S[t.] Croix Renaissance Group LLLP (SCRG)
> will provide for:
>
> ....
>
> • All necessary permits pertaining to
>   demolition and removal of scrap from
>   their premises.
> • Removal and disposal of any solid or
>   liquid material on site related to
>   the scrap dismantling and classified

> as environmental hazards, including
> all costs incurred in such removal.
>
> ....
>
> SCRG/MGA will be solely responsible for the
> dismantling and disposal of any hazardous
> waste material or other hazardous material
> related to scrap dismantling on-site.... All
> expenses pertaining to such removal of
> hazardous waste, including any dismantling
> required, will be paid by SCRG/MGA.
>
> ....
>
> SCRG Corporation will provide:
> - All necessary permits
> - Asbestos report

The contract further provides that mobilization was scheduled to begin "[o]n or around April 1, 2006," and once it began it was to "continue on schedule till completion."

Summary judgment with respect to the claims of Bennington Foods LLC concerning the permits and its reliance on what it was told about them by SCRG will be denied because of the existence of genuine issues of material fact. Bennington Foods LLC's second breach of contract claim under the Dismantling Contract in Count II involves the removal of hazardous materials from the SCRG site. Again, there are genuine disputes of material fact regarding the presence of asbestos and other hazardous materials at the SCRG site and SCRG's timely abatement thereof. Accordingly, we will deny the motion of SCRG for summary judgment on Count II with respect to the Dismantling Contract.

Counts III and IV are closely related. Bennington Foods LLC contends that SCRG fraudulently (Count III) or negligently (Count IV) induced it to do two things: (1) enter into the Dismantling Contract based on misrepresentations that the large tanks identified as T-30-1 and T-30-2 were included as part of the agreement for dismantling, and (2) agree to a mobilization date of April 1, 2006 in the Dismantling Contract based on misrepresentations that necessary permits would be obtained quickly.

The elements of common law fraud are: (1) a misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the representation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance. <u>Financial Trust Co., Inc. v. Citibank, N.A.</u>, 351 F. Supp. 2d 329, 332 (D.V.I. 2004); Restatement (Second) of Torts § 525 (1977).

Because of issue preclusion, we will grant summary judgment in favor of SCRG on Count III to the extent that it alleges that SCRG fraudulently induced Bennington Foods LLC to enter into the Scrap Metal Contract. Bennington Foods LLC also complains that it was fraudulently induced to sign that Dismantling Contract because it believed that tanks T-30-1 and T-30-2 were included. On its face the Dismantling Contract includes tanks T-30-1 and T-30-2, although SCRG now says that their inclusion was in error. Consequently, plaintiff has no

claim for fraudulent inducement in this regard since the
Dismantling Contract specifically encompasses the dismantling of
the tanks, provisions plaintiff wanted in the contract.  If what
Bennington Foods LLC is really alleging is SCRG's wrongful
recision of certain terms of the Dismantling Contract, its remedy
is for breach of contract not fraudulent inducement to enter into
a contract.  Thus, SCRG is entitled to summary judgment on any
fraud claim related to the tanks.  With respect to the second
issue in Count III regarding the mobilization date and the length
of the permitting process, Bennington Foods LLC has offered no
evidence that SCRG had actual knowledge that the length of the
permitting process would prevent the project from commencing or
proceeding on schedule.  Bennington Foods LLC has not come
forward with any evidence that SCRG engaged in any fraud.  The
motion of SCRG for summary judgment on all aspects of Count III
will therefore be granted.

Count IV asserts the same basic claims as Count III,
but alleges negligent misrepresentation rather than fraud.  In
the Virgin Islands, negligent misrepresentation occurs where:

> One who, in the course of his business,
> profession or employment, or in any other
> transaction in which he has a pecuniary
> interest, supplies false information for the
> guidance of others in their business
> transactions, is subject to liability for
> pecuniary loss caused to them by their
> justifiable reliance upon the information, if
> he fails to exercise reasonable care or
> competence in obtaining or communicating the
> information.

We will grant summary judgment on Count IV to the extent it brings claims related to the Scrap Metal Contract since neither SCRG nor Bennington Foods LLC was a party to it. We will also grant summary judgment on Count IV for the portion of the claim that relates to tanks T-30-1 and T-30-2, again because the dismantling of the them was written into the Dismantling Contract. There are genuine issues of material fact as to whether or not Bennington Foods LLC relied on the representations of SCRG concerning the length and course of the permitting process and whether their representations were negligent. We will deny the motion of SCRG for summary judgment on Count IV only with respect to the permitting process.

SCRG is entitled to summary judgment on Count VI in which Bennington Foods LLC seeks to reform the Scrap Metal Contract and the Dismantling Contract to change all mentions of "Bennington Group, L.L.C." to "Bennington Foods, L.L.C. d/b/a Bennington Group." Issue preclusion prevents us from granting the requested relief with respect to the Scrap Metal Contract because two courts have already found that the plaintiff Bennington Foods LLC was not a party to the contract. Reformation is available as a remedy only where an agreement exists between the parties and they seek to alter a writing to reflect their actual mutual intent. <u>See</u> Restatement (Second) Contracts § 155. Reformation cannot be used to forge an agreement where none exists. The claim of Bennington Foods LLC for reformation of the Dismantling Contract is also without

merit.  Plaintiff asks the court to replace all references to
"Bennington Group, L.L.C." with "Bennington Foods, L.L.C. d/b/a
Bennington Group."  However, the only "Bennington" entity
identified as a signatory and in the title and body of the
Dismantling Contract is "Bennington Group," which is the
fictitious name for Bennington Foods LLC.  We will therefore
grant summary judgment in favor of SCRG on Count VI.

In Count IX for conversion Bennington Foods LLC alleges
that the scrap metal harvested at the SCRG site belongs to it and
that SCRG has wrongfully converted it.  In Count X, trespass to
chattel, it claims that SCRG has wrongfully possessed and used
the scrap metal that belongs to Bennington Foods LLC.  The tort
of conversion is "an intentional exercise of dominion or control
over a chattel which so seriously interferes with the right of
another to control it that the actor may justly be required to
pay the other the full value of the chattel."  Restatement
(Second) Torts § 222A.  A trespass to chattel occurs where
someone intentionally dispossess, uses, or intermeddles with the
chattel of another.  Id. at § 217.  Counts IX and X are
predicated on the contention of Bennington Foods LLC that it
purchased the scrap metal from SCRG pursuant to the Scrap Metal
Contract.  It has no other evidence to support its claim.
Reliance on the terms of the Scrap Metal Contract, of course, is
barred by the doctrine of issue preclusion.  Therefore, we will
grant summary judgment to SCRG on Counts IX and X.

Finally, as noted earlier, plaintiff is no longer pursuing Counts V, VII and VIII. After reviewing the claims contained in those counts, we find them to be without merit. We will therefore grant the motion of SCRG for summary judgment on Counts V, VII, and VIII.

V.

We next turn to the motion of plaintiff Bennington Foods LLC for partial summary judgment. It asks us to conclude that: (1) there was a single integrated contract comprised of the Scrap Metal Contract and the Dismantling Contract, (2) Montrose was the agent of SCRG, (3) plaintiff Bennington Foods LLC was a party to the contract, and (4) Bennington Foods LLC purchased scrap metal from SCRG, which SCRG has wrongfully converted. Issue preclusion bars the court from finding that the Scrap Metal Contract and the Dismantling Contract were a single integrated contract that binds both Bennington Foods LLC and SCRG. Two courts have already held that Bennington Foods LLC was not a party to the Scrap Metal Contract and one court has held that SCRG was not a party to that contract. A court has also already found that Montrose was not the agent of SCRG. Moreover, each of these contracts by its terms is a separate integrated contract. There is also no evidence that Bennington Foods LLC, the plaintiff here, actually purchased scrap metal from SCRG. Thus, we will deny the motion of Bennington Foods LLC for partial summary judgment.

## VI.

Finally, we turn to the motion of SCRG for summary judgment on its counterclaim for reformation. SCRG requests that the court grant equitable relief and strike certain items from Table 1 of the Dismantling Contract, known as the "Partial List of Items to be Dismantled and Removed."

A court may grant reformation where "a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing." Restatement (Second) Contracts § 155. In other words, reformation is appropriate where the parties reached an agreement and then inadvertently misstate that agreement in writing. From the evidence in the record we conclude that the parties have raised genuine issues of material fact as to whether or not Table 1 of the Dismantling Contract accurately reflected their intent. Therefore, we will deny the motion of SCRG for summary judgment on its counterclaim for reformation.

## VII.

Accordingly, we will grant summary judgment in favor of defendant SCRG with respect to Counts I, III, V, VI, VII, VIII, IX, and X of the Second Amended Complaint. We will also grant the motion of SCRG with respect to Count II, breach of contract, to the extent it brings claims under the Scrap Metal Contract, but we will deny the motion with respect to Count II insofar as Bennington Foods LLC brings a claim under the Dismantling

-27-

Contract.  We will grant the motion of SCRG for the portion of Count IV, negligent misrepresentation, related to the permitting process, and we will deny the motion of SCRG on Count IV regarding the inclusion of tanks T-30-1 and T-30-2.  We will further deny the motion of plaintiff Bennington Foods LLC for partial summary judgment.  Finally, we will deny the motion of SCRG for summary judgment on its counterclaim for reformation.

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

BENNINGTON FOODS, L.L.C. d/b/a   :       CIVIL ACTION
BENNINGTON GROUP           :
                                :
          v.                 :
                                :
ST. CROIX RENAISSANCE GROUP,     :
L.L.P.                             :       NO. 06-154

ORDER

AND NOW this 8th day of September, 2009, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

(1)  the motion of defendant St. Croix Renaissance
Group, L.L.P. for summary judgment is GRANTED with respect to
Counts I, III, V, VI, VII, VIII, IX, and X of the Second Amended
Complaint;

(2)  the motion of defendant St. Croix Renaissance
Group, L.L.P. for summary judgment is GRANTED in part for Count
II with respect to the document known as the "Scrap Metal
Contract" and is DENIED in part with respect to the document
known as the "Dismantling Contract" or the "Contract
Specifications;"

(3)  the motion of defendant St. Croix Renaissance
Group, L.L.P. for summary judgment is GRANTED in part for Count
IV with respect to all claims arising under the Scrap Metal
Contract and to the inclusion of the tanks identified as T-30-1
and T-30-2 in the Dismantling Contract, and it is DENIED in part

with respect to the representations of St. Croix Renaissance Group, L.L.P. in the Dismantling Contract concerning the duration of the permitting process;

(4)  the motion of plaintiff Bennington Foods, L.L.C. d/b/a Bennington Group for partial summary judgment is DENIED; and

(5)  the motion of defendant St. Croix Renaissance Group, L.L.P. for summary judgment on its counterclaim for reformation is DENIED.

BY THE COURT:


/s/ Harvey Bartle III
HARVEY BARTLE III          C.J.
SITTING BY DESIGNATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX


BENNINGTON FOODS, L.L.C. d/b/a  :      CIVIL ACTION
BENNINGTON GROUP             :
                             :
        v.            :
                             :
ST. CROIX RENAISSANCE GROUP,   :
L.L.P.                     :       NO. 06-154


<u>ORDER</u>

AND NOW this 8th day of September, 2009, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that judgment is entered in favor of defendant St. Croix
Renaissance Group, L.L.P. and against plaintiff Bennington Foods,
L.L.C. with respect to:

(1)  Counts I, III, V, VI, VII, VIII, IX, and X of the
Second Amended Complaint;

(2)  the claims of plaintiff Bennington Foods, L.L.C.
in Count II of the Second Amended Complaint insofar as they
relate to the Scrap Metal Contract; and

(3)  the claims of plaintiff Bennington Foods, L.L.C.
in Count IV of the Second Amended Complaint as they relate to
the Scrap Metal Contract as well as the claims in Count IV
insofar as they relate to the inclusion of the tanks identified
in the Dismantling Contract as T-30-1 and T-30-2.

BY THE COURT:


/s/ Harvey Bartle III
HARVEY BARTLE III       C.J.
SITTING BY DESIGNATION